IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| J. V. HAMER,<br><br>    Plaintiff,<br><br>v.<br><br>NAVIENT CORPORATION,<br><br>    Defendant. | : **Civil Action No. 18-205-RGA**<br>: Justice of the Peace Court of the State<br>: of Delaware in and for New Castle County<br>: Case No. JP13-17-012216 |

J.V. Hamer, Paoli, Pennsylvania; Pro Se Plaintiff.

Joelle Eileen Polesky, Esquire, Stradley Ronon Stevens & Young, LLP, Wilmington, Delaware, Counsel for Defendant.

**MEMORANDUM OPINION**

August 23, 2018
Wilmington, Delaware


**ANDREWS, U.S. District Judge:**

Plaintiff J. V. Hamer, who appears *pro se*, filed this action In October 2017, in the Justice of the Peace Court of the State of Delaware in and for New Castle County. Defendant Navient Corporation removed the matter to this Court on February 5, 2018. (D.I. 1). The Court has jurisdiction pursuant to 28 U.S.C. § 1332. Pending is Defendant's motion to dismiss and Plaintiff's opposition. (D.I. 3, 4, 7). The matter has been fully briefed. For the reasons discussed below, the Court will grant Defendant's motion. Plaintiff will be given leave to file an amended complaint.

## BACKGROUND

This action concerns five federally guaranteed student loans Plaintiff secured from Sallie Mae Corporation, the predecessor of Defendant. The loan process began when Plaintiff was 17 and continued while he pursued his education. (D.I. 1-1 at ¶ 10). Plaintiff alleges he was told by Sallie Mae representatives that following his graduation, his loans would be forgiven after five years of qualified public service such as a career in education, military service, or other public service. (*Id.* at ¶ 11). Plaintiff's great-aunt is a co-signer for one of the loans.[1] (*Id.* at ¶ 16). Plaintiff began repaying his loans on January 7, 2005. (*Id.* at ¶ 12). He alleges that despite repeated demands, Defendant did not reveal to him how, and in what manner, the payments were applied to his loans. (*Id.*)

In June 2006, Plaintiff enrolled in a master's degree program and requested forbearance while he completed the program. (*Id.* at ¶ 13). He alleges that

---

[1] She is nearly 90, suffers from dementia and Alzheimer's disease, and resides in a nursing home. Plaintiff alleges that Defendant has repeatedly contacted his great-aunt via mail and threatening telephone calls. (*Id.* at ¶ 16).

1

notwithstanding the forbearance agreement, Defendant incessantly telephoned him day, night, and weekends demanding payment even though he was enrolled in a duly recognized program at a duly recognized institution of higher learning.  (*Id.*).  Following completion of the master's degree, Plaintiff resumed payments on the five loans beginning October 15, 2007.  (*Id.* at ¶ 14).

On or about April 30, 2014, Sallie Mae "spun off its loan servicing operation and most of its loan portfolio into a separate publicly traded company called Navient."  (*Id.* at ¶ 7).  On or about October 13, 2014, Sallie Mae assigned all its federal loans to Navient for servicing and collection.  (*Id.* at ¶ 15).

Plaintiff is currently pursuing a Doctor of Education and is in the process of researching and writing his thesis.  (*Id.* at ¶ 17).  He alleges that "Navient's recalcitrance and unlawful behavior has continued to cause [him] problems at his home and at his place of business."  (*Id.*).  Plaintiff alleges that, since 2005, he has repaid over $30,000, but has not been given credit for his payments.  (*Id.* at ¶ 18).  Plaintiff alleges that Defendant reported to all three major credit bureaus that he is delinquent and in arrears in loan payments while he has attempted in good faith to work out a payment plan with Defendant.  (*Id.* at ¶ 19).  Plaintiff alleges that during the week of September 11, 2017, Defendant repeatedly telephoned the office where he is employed and "left untoward and threatening messages" in violation of the Fair Debt Collection Practices Act ("FDCPA").  (*Id.* at ¶ 20).

For relief Plaintiff asks the Court to:  (1) enjoin Defendant from calling his great-aunt; (2) order Defendant to provide Plaintiff a complete accounting; (3) enjoin Defendant from falsely reporting to the various credit bureaus that Plaintiff is delinquent;

(4) adjudicate as satisfied all loans between Plaintiff and Defendant; (5) enter declaratory judgment that Defendant has consistently violated the FDCPA; and (6) enjoin Defendant from future violations. (*Id.* at ¶¶ 21-25). In addition, he seeks any and all other damages. (*Id.* at ¶ 26).

Navient moves for dismissal with prejudice pursuant to Rule 12(b)(6). (D.I. 4). Plaintiff opposes and, in the alternative, contends that "in the interest of justice and fundamental fairness," he should be afforded leave to amend or an opportunity to retain counsel.[2] (D.I. 7 at p.3).

## LEGAL STANDARDS

In reviewing a motion filed under Fed. R. Civ. P. 12(b)(6), the court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Because Plaintiff proceeds *pro se*, his pleading is liberally construed and his complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson*, 551 U.S. at 94. A Rule 12(b)(6) motion maybe granted only if, accepting the well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the complainant, a court concludes that those allegations "could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

"Though 'detailed factual allegations' are not required, a complaint must do more than simply provide 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Davis v. Abington Mem'l Hosp.*, 765 F.3d 236, 241 (3d Cir. 2014)

---

[2] Whether Plaintiff retains counsel is up to him. He does not need leave or permission from the Court to do so.

(quoting *Twombly*, 550 U.S. at 555). I am "not required to credit bald assertions or legal conclusions improperly alleged in the complaint." *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002). A complaint may not be dismissed, however, "for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby*, 135 S. Ct. 346, 346 (2014).

A complainant must plead facts sufficient to show that a claim has "substantive plausibility." *Id.* at 347. That plausibility must be found on the face of the complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the [complainant] pleads factual content that allows the court to draw the reasonable inference that the [accused] is liable for the misconduct alleged." *Id.* Deciding whether a claim is plausible will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

## DISCUSSION

Defendant moves for dismissal on the grounds that : (1) it is not a "debt collector" as defined under the FDPCA; (2) the Complaint fails to state a claim under the Fair Credit Reporting Act ("FCRA"); (3) any other claims, including state claims, fail to set forth sufficient factual allegations to state claims upon which relief may be granted; (4) Plaintiff lacks standing to assert claims on behalf of his great-aunt; and (5) the FDCPA and FCRA do not permit private litigants to obtain injunctive and declaratory relief.

**Fair Debt Collection Practices Act.** Defendant moves for dismissal of the FDCPA claim on the grounds that Plaintiff has failed allege the required elements of a FDCPA claim. It argues that when accepting as true the allegations that Sallie Mae is

4

"merely Navient's predecessor," this means it was attempting to collect a debt owed to itself and not to someone else. Thus, it is not a "debt collector" as defined under the FDCPA.

The FDCPA, 15 U.S.C. § 1692, *et seq.*, "prohibits 'debt collector[s]' from making false or misleading representations and from engaging in various abusive and unfair practices." *Heintz v. Jenkins*, 514 U.S. 291, 292 (1995). "Because the FDCPA is a remedial statute, the Third Circuit has construed its language broadly so as to give effect to its purpose." *Brown v. Card Serv. Ctr.*, 464 F.3d 450, 453 (3d Cir. 2006). A plaintiff bringing an FDCPA claim must show that "(1) []he is a consumer, (2) the defendant is a debt collector, (3) the defendant's challenged practice involves an attempt to collect a 'debt' as the Act defines it, and (4) the defendant has violated a provision of the FDCPA in attempting to collect the debt." *Jensen v. Pressler & Pressler*, 791 F.3d 413, 417 (3d Cir. 2015). The Act is limited to "consumer debt," defined as those debts "arising out of . . . transaction[s]" that are "primarily for personal, family, or household purposes." 15 U.S.C. § 1692a(5); *Heintz*, 514 U.S. at 293.

Under 15 U.S.C. § 1692d, a debt collector may not engage in "any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." The statute enumerates, without limitation, certain acts which are a violation, including "[c]ausing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number." *Id.* at 1692d(5).

The FDCPA defines "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the

5

collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). The term "debt collector" does not include "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity (i) is incidental to a bona fide fiduciary obligation or a bona fide escrow arrangement; (ii) concerns a debt which was originated by such person; (iii) concerns a debt which was not in default at the time it was obtained by such person; or (iv) concerns a debt obtained by such person as a secured party in a commercial credit transaction involving the creditor." *Id.* at § 1692a(6)(F).

The FDCPA claim is deficiently pled for several reasons. The claim does adequately allege the status of the five loans; that is whether they are in default or past due. See *Levy-Tatum v. Navient*, 2016 WL 75231, at *7 n.6 (E.D. Pa. Jan. 7, 2016) (parties servicing non-defaulted loans are not subject to the FDCPA). The allegations are confusing regarding the status of Defendant; whether it owns the debt, is a loan servicer, or is a debt collector. As argued by Defendant, the allegations that it is Sallie Mae's successor attempting to collect a debt describe a scenario that it is attempting to collect debts owed to itself and not to someone else, and therefore, it is not a debt collector under 15 U.S.C. § 1692a(6)(F)(ii). Nor is it clear if the debt was in default when Navient acquired it. *See, e.g., Spyer v. Navient Solutions, Inc.*, 2016 WL 1046789, at *3 (D.N.J. Mar. 15, 2016) ("Courts have indicated that an assignee of an obligation is not a 'debt collector' if the obligation is not in default at the time of the assignment"); *Taggart v. Wells Fargo Home Mortg., Inc.*, 2012 WL 4462787, at *4 (E.D.

Pa. Sept. 27, 2012) (loan servicers are not "debt collectors" under the FDCPA unless the debt being serviced was in default at the time it was obtained by the servicer)

The FDCPA claim is deficiently pled. Therefore, the Court will grant Defendant's motion to dismiss this claim. However, since it appears plausible that Plaintiff may be able to articulate a claim under the FDCPA, he will be given an opportunity to amend his pleading.

**Fair Credit Reporting Act**. The Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.*, is not invoked in the Complaint. However, the Complaint alleges that during an unstated time, Navient inaccurately reported information to credit reporting agencies. Defendant seeks dismissal of a potential FCRA claim as deficiently pled. (D.I. 4 at p.7). Plaintiff's Answering Brief (D.I. 7) suggests that he would like to pursue a FCRA claim.

The FCRA, enacted in 1970, "created a regulatory framework governing consumer credit reporting" that "'was crafted to protect consumers from the transmission of inaccurate information about them, and to establish credit reporting practices that utilize accurate, relevant, and current information in a confidential and responsible manner.'" *Seamans v. Temple Univ.*, 744 F.3d 853, 860 (3d Cir. 2014) (quoting *Cortez v. Trans Union, LLC*, 617 F.3d 688, 706 (3d Cir. 2010)). Under the FCRA, those who furnish information to consumer reporting agencies have two obligations: (1) to provide accurate information, 15 U.S.C. § 1681s-2(a), and (2) to undertake an investigation upon receipt of a notice of dispute regarding credit information that is furnished, 15 U.S.C. § 1681s-2(b). Violations of the obligation to provide complete and accurate information to consumer reporting agencies are not subject to a private cause of action "in the first instance," that is, before the consumer

has disputed the information with a credit bureau. *See Seamans*, 744 F.3d at 864. The FCRA "explicitly precludes private suits" for failure to comply with the duties set forth under 15 U.S.C. § 1681s-2(a), and "provides for enforcement of that provision by federal and state officials." *Seamans*, 744 F.3d at 864.

Duties of the furnisher of the information are not imposed until the furnisher receives notice from a consumer reporting agency, pursuant to 15 U.S.C. § 1681i(a)(2), that a consumer has disputed information provided by that furnisher/creditor. *See Seamans*, 744 F.3d at 864-65. Notice triggers the requirements of 15 U.S.C. § 1681s-2(b). *See id.* To bring a claim under § 1681s-2(b), Plaintiff must establish three elements: (1) he notified the consumer reporting agency of the disputed information, (2) the consumer reporting agency notified Defendant furnisher of the dispute, and (3) the furnisher then failed to investigate and modify the inaccurate information. *See, e.g.*, *SimmsParris v. Countrywide Fin. Corp.*, 652 F.3d 355, 358 (3d Cir. 2011).

As pled, the Complaint does not contain the elements necessary to state a claim under the FCRA. Therefore, the Court will grant the motion to dismiss the § 1681s-2(b) claim. However, since it appears plausible that Plaintiff may be able to articulate a § 1681s-2(b) claim, he will be given an opportunity to amend his pleading.

**Supplemental State Claims**. Defendant moves to dismiss any other potential supplemental state claims to the extent Plaintiff has raised them. (D.I. 4 at p.8). In the prayer for relief, Plaintiff seeks a complete accounting of his loans as well as a finding that his loans have been satisfied. However, it is far from clear that Plaintiff intends his prayer for relief to serve as raising claims under state law.

To the extent state claims are raised, they too are deficiently pled. Defendant's motion to dismiss will therefore be granted. Since it appears plausible that Plaintiff may be able to articulate a claim or claims under state law, he will be given an opportunity to amend his pleading.

**Injunctive and Declaratory Relief.** Defendant seeks dismissal of Plaintiff's request for injunctive and declaratory relief. To the extent Plaintiff seeks injunctive relief under the FDCPA or the FCRA, the claims must fail. "Injunctive and declaratory relief are not available to litigants acting in an individual capacity under the FDCPA." *Weiss v. Regal Collections*, 385 F.3d 337, 342 (3d Cir. 2004), *abrogated on other grounds by Campbell-Ewald Co. v. Gomez*, 136 S.Ct. 663 (2016). Nor is it available under the FCRA. *See Washington v. CSC Credit Services, Inc.*, 199 F.3d 263, 268 (5th Cir. 2000) ("affirmative grant of power to [Federal Trade Commission] to pursue injunctive relief, coupled with the absence of a similar grant to private litigants when they are expressly granted the right to obtain damages and other relief, persuasively demonstrates that Congress vested the power to obtain injunctive relief solely with the [Federal Trade Commission]"); *Gelman v. State Farm Mut. Auto. Ins. Co.*, 2007 WL 2306578, at *9 (E.D. Pa. 2007).

Accordingly, the Court will grant Defendant's motion to dismiss Plaintiff's request for injunctive and declaratory relief.

**Standing.** Defendant moves to dismiss any claims raised by Plaintiff on behalf of his great-aunt for lack of standing. The allegations do not indicate that Plaintiff is an attorney. As a non-attorney, he may not act as an attorney for other individuals, including his great-aunt, and may only represent himself in this Court. *See* 28 U.S.C.

9

§1654; *see also Murray on behalf of Purnell v. City of Philadelphia*, __ F.3d __, 2018 WL 3978205 (3d Cir. Aug. 21, 2018) (limiting *pro se* representation pursuant to § 1654 serves the interests of the represented party as well as the interests of adversaries and the court); *Osei-Afriye v. The Medical College of Pennsylvania*, 937 F.2d 876 (3d Cir. 1991) (non-lawyer appearing pro se may not act as attorney for his children).

Plaintiff, as a non-attorney, may not litigate claims on behalf of his great-aunt. Therefore, the Court will grant Defendant's motion to dismiss any claims brought on her behalf.[3]

## CONCLUSION

Based upon the above discussion, the Court will: (1) grant Defendant's motion to dismiss the Complaint. (D.I. 3). Plaintiff will be given leave to file an amended complaint.

An appropriate order will be entered.

---

[3] Dismissal of this claim does not serve to preclude amendment should Plaintiff's great-aunt wish to join the matter and proceed *pro se* as a co-plaintiff or should counsel appear on behalf of Plaintiff and his great-aunt.

10